UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

| | |
|---|---|
| RHONDA BOWER, Individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br>v.<br><br>NATIONAL ENTERPRISE SYSTEMS INC.,<br><br>        Defendant. | Case No.: 18-cv-1215<br><br>**AMENDED CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA") and the Wisconsin Consumer Act, Chs. 421-427, Wis. Stats. (the "WCA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiffs pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Rhonda Bower is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from Plaintiff a debt allegedly incurred for personal, family, or household purposes.

5. Plaintiff is also a "customer" as defined in the WCA, Wis. Stat. § 421.301(17), in that the alleged debt Defendants attempted to collect from Plaintiff arose from an agreement to defer payment.

6. Defendant National Enterprise Systems, Inc. ("NES") is a foreign business corporation with its principal offices located at 29125 Solon Road, Solon, Ohio 44139.

7. NES is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

8. NES is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes.

9. NES is licensed as a "Collection Agency" under Wis. Stat. § 218.04 and Wis. Admin. Code Ch. DFI-Bkg. 74.

10. NES is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

## FACTS

### *NES Letters*

11. On or about July 7, 2017, NES mailed a debt collection letter to Plaintiff regarding an alleged debt owed to "Bank of America, N.A." ("Bank of America") and associated with Plaintiff's Bank of America account with an account number ending in 0056. A copy of the letter is attached to this complaint as Exhibit A.

12. Upon information and belief, the alleged debt referenced in Exhibit A was incurred as the result of the use of a credit card, used only for personal, family, or household purposes.

13. Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

14. Upon information and belief, Exhibit A is a form debt collection letter, used by NES to attempt to collect alleged debts.

2

15. Upon information and belief, <u>Exhibit A</u> was the first written communication NES mailed to Plaintiff regarding the alleged debt referenced in <u>Exhibit A</u>.

16. <u>Exhibit A</u> contains the statutory debt validation notice that the FDCPA, 15 U.S.C. § 1692g, requires the debt collector mail the alleged debtor along with, or within five days of, the initial communication:

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will: obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

<u>Exhibit A</u>.

17. <u>Exhibit A</u> also contains the following:

> Creditor: Bank of America, N.A.
> Account Number: XXXXXXXXXXXX0056
> NES Account Number: ███9070
> Please contact: (800) 973-0600
> **Total Amount Due: $1,993.91**

<u>Exhibit A</u>.

18. On or about November 2, 2017, NES mailed a debt collection letter to Plaintiff regarding the same alleged debt, allegedly owed to Bank of America and associated with Plaintiff's Bank of America account with an account number ending in 0056. A copy of the letter is attached to this complaint as <u>Exhibit B</u>.

19. Upon information and belief, <u>Exhibit B</u> is another form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

20. Upon information and belief, <u>Exhibit B</u> is another form debt collection letter, used by NES to attempt to collect alleged debts.

3

21. Exhibit B contains the following:

> Creditor: Bank of America, N.A.
> Account Number: XXXXXXXXXXXX0056
> NES Account Number: ▇▇▇9070
>
> Please contact: (800) 973-0600
>
> **Total Amount Due: $1,993.91**

Exhibit B.

22. Exhibit B also contains the following:

> Please note the payment options below that are available to you as of the date of this letter. You may make payment through the mail or over the phone by calling us at (800) 973-0600.
>
> Make one payment of the total amount due **$1,993.91**
> Pay 5 monthly payments of $ 332.32 and one final payment of $ 332.31
> Pay 11 monthly payments of $ 166.16 and one final payment of $ 166.15
> Pay 23 monthly payments of $ 83.08 and one final payment of $ 83.07

Exhibit B.

23. Exhibit B also contains a payment remittance slip, which contains the following:

> Please forward all payments and correspondence to:
> **NATIONAL ENTERPRISE SYSTEMS**
> Ph. (800) 973-0600
> 2479 Edison Blvd., Unit A
> Twinsburg OH 44087-2340
>
> November 2, 2017
> NES Account #: ▇▇▇9070
> Amount Due: $1,993.91    Amt Paid: $_____
> Daytime Phone: (   ) ____ - _____
> Evening Phone: (   ) ____ - _____

Exhibit B.

24. Exhibit B states that, as of November 2, 2017, NES collecting an alleged debt Plaintiff owed to Bank of America in the amount of $1,993.91.

25. Exhibit B also provides several different monthly installment payment options.

26. Exhibit B further states that Plaintiff should "forward all payments and correspondence" regarding this debt to NES.

4

## Firstsource Advantage, LLC Letter

27. On or about November 7, 2017, non-party debt collector Firstsource Advantage, LLC ("FSA") mailed a debt collection letter to Plaintiff regarding the same alleged debt owed to Bank of America and associated with Plaintiff's Bank of America account with an account number ending in 0056. A copy of the letter is attached to this complaint as Exhibit C.

28. Upon information and belief, Exhibit C is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

29. Upon information and belief, Exhibit C is a form debt collection letter, used by FSA to attempt to collect alleged debts.

30. Upon information and belief, Exhibit C was the first written communication FSA mailed to Plaintiff regarding the alleged debt referenced in Exhibit C.

31. Exhibit C contains the statutory debt validation notice that the FDCPA, 15 U.S.C. § 1692g, requires the debt collector mail the alleged debtor along with, or within five days of, the initial communication:

> Unless you notify this office within thirty days after receiving this notice that you dispute the validity of this debt, or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within thirty days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment against you and mail you a copy of such verification or judgment. If you request in writing within thirty days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

Exhibit C.

32. Exhibit C also contains the following:

> Statement Date: 11-07-17
> Creditor: Bank of America, N.A.
> Our Reference #: ▆▆▆▆7136
> Account #: XXXXXXXXXXXX0056
> Account Balance: $1,993.91

Exhibit C.

5

33. Exhibit C also contains a payment remittance slip, which contains the following:

> Make Payment To:
> FIRSTSOURCE ADVANTAGE, LLC
> PO BOX 628
> BUFFALO NY 14240-0628

Exhibit C.

34. On the face of Exhibits B & C, it is impossible to determine who is authorized to collect the debt as of the dates of Exhibits B & C, and whether NES and/or FSA is acting illegitimately.

35. NES mailed Exhibit B on or about November 2, 2017, but FSA mailed Exhibit C less than a week later, on or about November 7, 2017.

36. Debts like the one referenced in Exhibits A-C are intangible personal property known as choses in action, which are not only assignable but are traditionally understood as having bifurcated title: legal title and equitable title. *See Unifund CCR Partners v. Shah*, 993 N.E.2d 518, 521 (Ill. App. Ct. 1st Dist. 2013).

37. Where the creditor of a debt hires a third party collection agent who attempts to collect the debt in the collection agent's own name (*see* Exhibit B, instructing debtors to "forward all payments and correspondence to NATIONAL ENTERPRISE SYSTEMS" and Exhibit C, instructing debtors to "make your check or money order payable to Firstsource Advantage, LLC"), the creditor assigns legal title to the chose in action, but retains equitable title. *Unifund CCR Partners v. Shah*, 993 N.E. N.E.2d 518, 521 (Ill. App. Ct. 1st Dist. 2013) (citing *Sprint Communs. Co., L.P. v. APCC Servs.*, 554 U.S. 269, 276-77 (2008)).

38. On the face of Exhibits B & C, it is impossible to determine whether NES or FSA had legal title to the debt referenced in Exhibits B & C as of the dates of Exhibits B & C.

6

39. On the face of Exhibits B & C, it is impossible to determine whether NES or the creditor contracted with FSA to mail Plaintiff Exhibit C.

40. November 2, 2017, the date of Exhibit B is a Thursday. It is not uncommon for debt collectors to mail their letters a day or two later. *See, e.g., Kellar v. Fin. Recovery Servs.*, 2013 U.S. Dist. LEXIS 183836, at *9 (D.N.D. Oct. 29, 2013) (finding a validation notice was not backdated and "tak[ing] judicial notice that printing a letter one day and placing it in the mail the following day is a common business occurrence, depending on the time of day the letter was printed, the volume of outgoing mail on that day, and the availability of sufficient personnel to process the mail on that day.").

41. It is likely that Exhibit C would have been mailed to the consumer by the time she received Exhibit B; at most, there would have been one or two days between the time she received Exhibit B and the time FSA mailed Exhibit C.

42. The misleading and confusing representation is material because the consumer would be left wondering whether Exhibit B and/or Exhibit C was a scam, and whether NES, FSA, or someone else was legally authorized to collect payment. *See, e.g., Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 324-25 (7th Cir. 2016):

> Suppose the sender of these letters had not been [the authorized debt collector] but a party who had no legal right to collect the debts on [the creditor's] behalf---perhaps someone who gathered debt information from public court records. The letters did not identify who currently owned the debts, so a consumer wishing to verify that a payment would extinguish her obligation could not contact the current creditor to confirm that paying the letter-writer would be the proper course of action. In fact, the [debt collection] letters actually instructed consumers to direct all further contact not to [the creditor] but to [the debt collector] itself. Unless the unsophisticated consumer makes the effort to demand verification under § 1692g, an unscrupulous sender could confirm that that the consumer should send it a payment to extinguish the debt. That consumer would find that she had lost money while her actual debt remained unpaid.

7

43. Moreover, even assuming the consumer would not question whether it would be legitimate for two different debt collectors to simultaneously collect the same debt, the confusion and misrepresentation inherent in the disclosure of the chain of title of the debt referenced in Exhibits B & C is material.

44. Even a consumer who assumed the debt was valid would be confused and misled upon receiving debt collection letters from two different debt collectors within a span of a few days, especially where both letters directed the debtor to tender payment to the debt collector rather than the creditor. There would be no way to determine which debt collector should receive the payment, which would increase the risk of double-payment of the same debt.

45. Additionally, Exhibit B offers that the debtor may pay the debt off in installments, whereas Exhibit C does not offer these installment plans.

46. While the installment plan that is offered does not "settle" the debt for less than the amount owed, a consumer tendering payments according to an installment plan would see a positive effect on her credit reporting.

   a. TransUnion --- one of the three major consumer reporting agencies --- has an account status that describes charged-off accounts that the consumer has begun to pay. *See* https://www.transunion.com/resources/transunion/doc/compliance-and-legislative-updates/HowToReadCreditReport.pdf (*compare* 09 ("Charged off to bad debt") *with* 9P ("Paying or paid account with Current Manner of Payment 09 or 9B").

   b. Experian --- another of the three major consumer reporting agencies --- also has an account status that describes charged-off accounts that the consumer has begun to pay. *See* https://www.experian.com/assets/access/arf7-glossary.pdf (Payment Status 86* ("COFF NOW PAY") means "Now paying/Was a charge-off").

47. Additionally, the consumer would understand that, as long as she was making payments pursuant to the installment plan that was offered in Exhibit B, neither the debt collector nor the creditor could "ramp up" collection by, *e.g.,* suing her or attempting to garnish her

8

wages.  The offer to spread payments out over numerous installments is a "consumer credit transaction" for which a consumer in default is entitled to receive notice of right to cure the default prior to acceleration of the debt.  *See* Wis. Stat. §§ 421.301(10) (defining "consumer credit transaction"); 425.105 (creditor's remedies and consumer's rights in case of consumer's default in consumer credit transaction); *see also, Rizzo v. Pierce & Assocs.*, 351 F.3d 791, 794 (7th Cir. 2003) (discussing reinstatement of loans).

48. Based on Exhibits B & C, it is impossible to determine the chain of title to the debt.

49. It is possible that Bank of America assigned legal title to the debt to NES, and NES assigned legal title to FSA, in which case the debt would still be subject to payment according to the installment plans NES offered.

50. It is also possible that Bank of America assigned legal title to the debt to NES, but NES returned legal title to Bank of America, and Bank of America subsequently assigned legal title to FSA, in which case the installment plans NES offered may no longer be on the table.  *See* Exhibit B ("note the payment options below that are available to you *as of the date of this letter*.") (emphasis added).

51. Based on Exhibits B & C, there is no way to determine whether the installment plan is still available to the Plaintiff.

52. Moreover, Exhibit C informs the consumer she may dispute the debt, and that she may require the debt collector to obtain verification of the debt by providing the debt collector with written notification of the dispute.

53. The representation in Exhibit B, mailed just a few days before Exhibit C, that the consumer should "**forward all payments and correspondence to NATIONAL ENTERPRISE**

9

**SYSTEMS**" (emphasis in original), is inconsistent with and overshadows the disclosure in Exhibit C that the consumer must notify *this office* to effectively communicate the dispute.

54. Although Exhibits B & C were mailed to Plaintiff's attorneys, they are no less confusing and misleading because even a competent attorney would need to engage an investigation to determine which debt collector was authorized to collect the debt. *See, Janetos v. Fulton Friedman & Gullace, LLP*, 2015 U.S. Dist. LEXIS 48774, at *16-17 (N.D. Ill. Apr. 13, 2015) ("The internet searches that Mr. Edelman describes would take a competent attorney a few minutes to complete and dispel any confusion created by the word 'transferred.'"), *rev'd by Janetos*, 825 F.3d 317, 322 n.2 (7th Cir. 2016) (explaining that it would be "'passing odd if the fact that a consumer was represented excused the debt collector from having to convey to the consumer the information to which the statute entitles him."); *see also Evory v. RJM Acquisitions Funding L.L.C.*, 505 F.3d 769, 775 (7th Cir. 2007) ("The lawyer might be unable to discover the falsity of the representation without an investigation that he might be unable, depending on his client's resources, to undertake.").

55. Plaintiff was confused and misled by Exhibits B & C.

56. The unsophisticated consumer would be confused and misled by Exhibits B & C.

57. Plaintiff had to spend time and money investigating Exhibits B & C.

58. Plaintiff had to take time to obtain and meet with counsel, including traveling to counsel's office by car and its related expenses, including but not limited to the cost of gasoline and mileage, to advise Plaintiffs on the consequences of Exhibits B & C.

### *The FDCPA*

59. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp Solutions*,

10

Case 2:18-cv-01215-NJ    Filed 08/07/18    Page 10 of 20    Document 1

2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018) (" 'a plaintiff who receives misinformation form a debt collector has suffered the type of injury the FDCPA was intended to protect against' and 'satisfies the concrete injury in fact requirement of Article III.' ") (quoting *Pogorzelski v. Patenaude & Felix APC*, 2017 U.S. Dist. LEXIS 89678, 2017 WL 2539782, at *3 (E.D. Wis. June 12, 2017)); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Neeley v. Portfolio Recovery Assocs., LLC*, 268 F. Supp. 3d 978, 982 (S.D. Ind. Aug. 2, 2017) ("[N]othing in *Spokeo* overruled the Seventh Circuit's decisions that emphasized and affirmed the power of Congress to pass legislation creating new rights, which if violated, would confer standing under Article III.") (alteration in original) (quoting *Saenz v. Buckeye Check Cashing*, 2016 U.S. Dist. LEXIS 127784, at *5 (N.D. Ill. Sep. 20, 2016); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a

11

decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

60.     Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

61. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

62. 15 U.S.C. § 1692e(2)(a) specifically prohibits debt collectors from making false representations about "the character, amount, or legal status of any debt."

63. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

64. For purposes of Plaintiff's claim under 15 U.S.C. § 1692e, the unsophisticated consumer would not be able to determine which debt collector is actually authorized to collect the debt from reading Exhibits B & C, which would lead the consumer to believe the debt collector was attempting to scam her.

65. Additionally, the unsophisticated consumer would not be able to determine whether a payment according to the installment plans offered by NES would require the debt collector or creditor to update the status of the account for her credit report, or whether it would bring the account to a "current" status which would provide her relief from the anxiety of a past due and accelerated account, including the possibility that the creditor could file a lawsuit against the debtor at any time.

66. 15 U.S.C. § 1692f generally prohibits debt collectors from using any "unfair or unconscionable means to collect or attempt to collect any debt."

67. 15 U.S.C. § 1692g states, in pertinent part:

**(a) Notice of debt; contents**

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

13

      (1) the amount of the debt;

      . . .

      (3) a statement that, unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

      (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

      (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

**(b) Disputed debts**

. . .

Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

### *The WCA*

68. The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

69. The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n**.**15, 596 N.W.2d 786 (1999) (citations omitted).

14

70. To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

71. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies, including punitive damages. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

72. The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

73. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

74. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

75. Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer . . . in such a manner as can reasonably be expected to threaten or harass the customer."

15

76. Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct which can reasonably be expected to threaten or harass the customer . . . ."

77. Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

78. The Wisconsin Department of Financial Institutions, which is tasked with regulating licensed collection agencies, has found that "conduct which violates the Federal Fair Debt Collection Practices Act" can reasonably be expected to threaten or harass the customer. *See* Wis. Admin. Code DFI-Bkg 74.16(9) ("Oppressive and deceptive practices prohibited.").

79. The failure to effectively convey a customer's validation rights can reasonably be expected to harass the customer. *See* Wis. Admin. Code DFI-Bkg § 74.16(9) ("Oppressive and deceptive practices prohibited.") (prohibiting licensed Collection Agencies from engaging in conduct that "can reasonably be expected to threaten or harass the customer, including conduct which violates the Federal Fair Debt Collection Practices Act"); *see also Flood v. Mercantile Adjustment Bureau, LLC*, 176 P.3d 769, 776 (Colo. Jan. 22, 2008) (communicating that a consumer's rights would be preserved through oral communication effectively misleads the consumer into delaying the transmission of the consumer's written request for the verifying documentation, thereby causing the loss of valuable consumer rights violated state statute forbidding harassing, abusive, misleading, and unfair debt collection practices).

## **COUNT I – FDCPA**

80. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

81. Exhibit B represents to the consumer that NES is authorized to collect the account, and directs the consumer to "forward all payments and correspondence" to NES.

82. Exhibit C, which would have been mailed before the consumer even received Exhibit B, represents to the consumer that FSA is authorized to collect the account.

83. Exhibit B is inconsistent with Exhibit C, and is confusing and misleading to the unsophisticated consumer.

84. In light of Exhibit C, Exhibit B would confuse and mislead the consumer as to whether NES, FSA, or neither is actually authorized to collect the debt.

85. In light of Exhibit C, Exhibit B would confuse and mislead the consumer as to whether the payment plans offered in Exhibit B are still available to the consumer.

86. In light of Exhibit C, Exhibit B would confuse and mislead the consumer as to who to contact to dispute the debt.

87. In light of Exhibit C, Exhibit B is confusing and misleading to the consumer as to how she should effectively communicate a dispute.

88. Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(10), 1692f, 1692g(a)(1), 1692g(a)(3), 1692g(a)(4), 1692g(a)(5), and 1692g(b).

## COUNT II – WCA

89. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

90. Defendant NES is licensed as a "Collection Agency" by the Division of Banking in the Wisconsin Department of Financial Institutions pursuant to Wis. Stat. § 218.04 and Wis. Admin. Code Ch. DFI-Bkg. Ch. 74.

91. Exhibit B represents to the consumer that NES is authorized to collect the account, and directs the consumer to "forward all payments and correspondence" to NES.

92. Exhibit C, which would have been mailed before the consumer even received Exhibit B, represents to the consumer that FSA is authorized to collect the account.

17

93. Exhibit B is inconsistent with Exhibit C, and is confusing and misleading to the unsophisticated consumer.

94. In light of Exhibit C, Exhibit B would confuse and mislead the consumer as to whether NES, FSA, or neither is actually authorized to collect the debt.

95. In light of Exhibit C, Exhibit B would confuse and mislead the consumer as to whether the payment plans offered in Exhibit B are still available to the consumer.

96. In light of Exhibit C, Exhibit B would confuse and mislead the consumer as to who to contact to dispute the debt.

97. In light of Exhibit C, Exhibit B is confusing and misleading to the consumer as to how she should effectively communicate a dispute.

98. In light of Exhibit C, Exhibit B violates the FDCPA.

99. Defendant violated Wis. Stat. §§ 427.104(1)(g), 427.104(1)(h), and 427.104(1)(j).

## CLASS ALLEGATIONS

100. Plaintiff bring this action on behalf of two classes.

101. Class I ("Nationwide Class") consists of (a) all natural persons in the United States of America (b) who were sent a series of collection letters, (c) in the form of Exhibits B & C, (d) seeking to collect a debt for personal, family or household purposes, (e) where the letter in the form of Exhibit C was mailed less than 10 days after the letter in the form of Exhibit B, and (f) the letter in the form of Exhibit C was mailed between August 7, 2017 and April 25, 2018, inclusive, (g) and neither letter was returned by the postal service.

102. Class II ("Wisconsin Class") consists of (a) all natural persons in the State of Wisconsin (b) who were sent a series of collection letters, (c) in the form of Exhibits B & C, (d) seeking to collect a debt for personal, family or household purposes, (e) where the letter in the form of Exhibit C was mailed less than 10 days after the letter in the form of Exhibit B, and (f)

18

the letter in the form of Exhibit C was mailed between August 7, 2016 and August 7, 2018, inclusive, (g) and neither letter was returned by the postal service.

103. Each class is so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of each class.

104. There are questions of law and fact common to the members of each class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether Defendants complied with the FDCPA and/or WCA.

105. Plaintiff's claims are typical of the claims of the members of each class. All are based on the same factual and legal theories.

106. Plaintiff will fairly and adequately represent the interests of the members of each class. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

107. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

108. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Classes and against Defendant for:

    i. actual damages;

    ii. statutory damages;

    iii. attorneys' fees, litigation expenses and costs of suit; and

      iv. such other or further relief as the Court deems proper.

Dated: August 7, 2018

                              **ADEMI & O'REILLY, LLP**

                  By:    /s/ Mark A. Eldridge\_\_\_
                            Shpetim Ademi (SBN 1026973)
                            John D. Blythin (SBN 1046105)
                            Mark A. Eldridge (SBN 1089944)
                            Jesse Fruchter (SBN 1097673)
                            3620 East Layton Avenue
                            Cudahy, WI 53110
                            (414) 482-8000
                            (414) 482-8001 (fax)
                            sademi@ademilaw.com
                            jblythin@ademilaw.com
                            meldridge@ademilaw.com
                            jfruchter@ademilaw.com